IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 1:26-cv-01395-PAB

TIMOTHY J. CHRISTENSEN,

Plaintiff,

Jury Trial requested

(please check one)

X Yes ___ No

v.

BOARD OF TRUSTEES OF METROPOLITAN STATE UNIVERSITY OF DENVER;
JANINE DAVIDSON, in her official capacity;
MATTHEW MAKLEY, in his official capacity;
KARIN RANTA-CURRAN, in her official capacity;
CONNIE SANDERS, in her official capacity;
ANDREW McGEEHAN, in his individual capacity;
ADRIENNE MARTINEZ, in her individual capacity;
TAYLOR TACKETT, in his individual capacity; and
EDWARD BROWN, in his individual capacity,
Defendants.

---

**THIRD AMENDED AND SUPPLEMENTAL COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

## A. PLAINTIFF INFORMATION

Timothy J. Christensen
10987 E. Crestline Cir.

Englewood, CO 80111

983-214-9249

TJHVACRLLC@gmail.com

**B. DEFENDANT(S) INFORMATION**

Defendant 1:

BOARD OF TRUSTEES OF METROPOLITAN STATE UNIVERSITY OF DENVER

c/o Office of General Counsel / Secretary to the Board

890 Auraria Parkway, Denver, CO 80204

303-556-5740 generalcounsel@msudenver.edu

Defendant 2:

JANINE DAVIDSON, in her official capacity

Office of the President, MSU Denver

890 Auraria Parkway, Denver, CO 80204

presidentdavidson@msudenver.edu

Defendant 3:

MATTHEW MAKLEY, in his official capacity

Office of the Provost / Academic Affairs, MSU Denver

890 Auraria Parkway, Denver, CO 80204

mmakley@msudenver.edu

Defendant 4:

KARIN RANTA-CURRAN, in her official capacity

Office of Equal Opportunity, MSU Denver

890 Auraria Parkway, Denver, CO 80204

karantacur@msudenver.edu

Defendant 5:

CONNIE SANDERS, in her official capacity

Office of the Registrar, MSU Denver

890 Auraria Parkway, Denver, CO 80204

csande29@msudenver.edu

Defendant 6:

ANDREW McGEEHAN, in his individual capacity

Dean of Students Office, MSU Denver

890 Auraria Parkway, Denver, CO 80204

anmcgeehan@msudenver.edu

Defendant 7:

ADRIENNE MARTINEZ, in her individual capacity

Classroom to Career Initiatives, MSU Denver

890 Auraria Parkway, Denver, CO 80204

amart475@msudenver.edu

Defendant 8:

TAYLOR TACKETT, in his individual capacity

Dean of Students Office, MSU Denver

890 Auraria Parkway, Denver, CO 80204

tatackett@msudenver.edu

Defendant 9:

EDWARD BROWN, in his individual capacity
Office of the President, MSU Denver
890 Auraria Parkway, Denver, CO 80204
ebrow100@msudenver.edu

**C. JURISDICTION**

[ X ] Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States).

Specific federal statutes and constitutional provisions at issue:

42 U.S.C. § 12132; 42 U.S.C. § 12203; 29 U.S.C. §§ 794, 794a; 42 U.S.C. § 1983; U.S. Const. amends. I and XIV; 28 U.S.C. §§ 1343, 2201–2202; 42 U.S.C. §§ 12205, 1988.

**D. STATEMENT OF CLAIM(S)**

See continuation pages labeled “D. STATEMENT OF CLAIMS,” included in this complaint. Plaintiff asserts claims under Title II of the ADA, Section 504 of the Rehabilitation Act, ADA/Section 504 retaliation and interference, and 42 U.S.C. § 1983 (First and Fourteenth Amendments), as set forth in those continuation pages.

**E. REQUEST FOR RELIEF**

See continuation pages labeled “E. REQUEST FOR RELIEF,” included in this complaint.

**F. PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. See 28 U.S.C. § 1746; 18 U.S.C. § 1621. Under Fed. R. Civ. P. 11, by signing below I also certify to the best of my knowledge, information, and belief that this complaint is not being presented for an improper purpose, is supported by existing law or a nonfrivolous argument for extending it, and that the factual contentions have or will likely have evidentiary support.

s/ Timothy J. Christensen

(Plaintiff's signature)

Dated: July 9, 2026

(Revised February 2022)

**D. STATEMENT OF CLAIMS**

**I. PRELIMINARY STATEMENT**

1. This is a civil-rights action by a qualified disabled student against Metropolitan State University of Denver ("MSU Denver") and its officials. Plaintiff Timothy J. Christensen remains an enrolled MSU Denver student with disability accommodations approved through the University's Access Center. He brings claims under Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the anti-retaliation and anti-interference provisions of those statutes, and 42 U.S.C. § 1983 for violation of the

Fourteenth Amendment's guarantee of procedural due process and the First Amendment's protection of the right to petition.

2. Plaintiff seeks both (a) prospective declaratory and injunctive relief to remedy ongoing, MSU- controlled conditions that presently constrain his access to University programs and services and his ability to complete his degree, and (b) compensatory and, where available, punitive damages for completed violations of his federal rights.

3. This Third Amended Complaint adds damages claims and a jury demand and adds individual- capacity claims against the conduct decision-maker (McGeehan), the appeal officer (Martinez), the Dean of Students (Tackett), and the President's Chief of Staff (Brown). It also pleads facts that arose or matured after the Second Amended Complaint, including the change of Plaintiff’s PHY-4921 grade, the status of his active course Incompletes, and a still-operative disciplinary directive governing how he may access the Financial Aid office.

## II. PARTIES

### A. Plaintiff

4. Plaintiff Timothy J. Christensen is a qualified individual with a disability and an enrolled student in MSU Denver's physics program. At all relevant times he had disability accommodations approved through the University's Access Center, including modified assignment deadlines, extended time, use of technology, advance access to course materials, breaks, private space, sensory-reducing devices, sit/stand options, and group-work substitution.

**B. Entity and Official-Capacity Defendants**

5. Defendant Board of Trustees of Metropolitan State University of Denver is the public entity responsible for MSU Denver's educational programs, its obligations under Title II and Section 504, and the federally funded programs through which Plaintiff was enrolled. The Board is sued as the public-entity and funding-recipient defendant on the ADA Title II, Section 504, and retaliation/interference claims.

6. Defendant Janine Davidson is sued in her official capacity as President of MSU Denver for prospective relief. Her office has authority to direct institutional protection, non-retaliation, record preservation, and correction of ongoing academic consequences.

7. Defendant Matthew Makley is sued in his official capacity as Provost and Executive Vice President for Academic Affairs for prospective relief. His office controls or substantially affects course access, course-completion pathways, faculty implementation of academic accommodations, and academic-status protection.

8. Defendant Karin Ranta-Curran is sued in her official capacity as Executive Director of the Office of Equal Opportunity, Title IX Coordinator for prospective relief. Her office controlled or substantially affected the routing of Plaintiff's disability-access and retaliation concerns and the retention and supervision of the outside investigator described below.

9. Defendant Connie Sanders is sued in her official capacity as Registrar for prospective relief. Her office controls or implements transcript status, enrollment records, Incomplete status, registration consequences, transfer-related records, and academic-standing records.

**C. Individual-Capacity Defendants**

10. Defendant Andrew McGeehan is sued in his individual capacity. At all relevant times he was Associate Dean of Students. Acting under color of state law, he served as the decision-maker in MSU Denver student-conduct Case No. 2024023301, conducted the November 15, 2024 conduct meeting, issued the November 22, 2024 decision, imposed the disciplinary directive governing Plaintiff's Financial Aid contact, and continued to administer that directive through at least December 2025.

11. Defendant Adrienne Martinez is sued in her individual capacity. At the relevant time she was Associate Vice President of Classroom to Career Initiatives and served as the University Appeal Officer assigned to Case No. 2024023301. Acting under color of state law, she issued the January 22, 2025 decision denying Plaintiff's appeal.

12. Defendant Taylor Tackett is sued in his individual capacity. At the relevant time he was Associate Vice President for Student Engagement and Well-Being and Dean of Students. Acting under color of state law, after Plaintiff escalated disability-access and safety concerns to the Office of the President seeking neutral oversight — an escalation that complained of Tackett’s own office — Tackett was informed of Plaintiff's confidential communication and initiated direct, unsolicited contact with Plaintiff stating that he had "learned about the concerns recently shared with the President's Office." Plaintiff's protected communication, which contained disability-status and safety information, was relayed to Tackett's office without Plaintiff’s authorization.

13. Defendant Edward Brown is sued in his individual capacity. At all relevant times he was Chief of Staff in the Office of the President. Acting under color of state law, on or about March 5–6, 2026 he personally received Plaintiff's escalation to the President's

Office seeking neutral oversight, responded that the Office of Equal Opportunity "was the only avenue," redirected Plaintiff back into the same internal structure, and gave Plaintiff materially incorrect channeling information.

## III. JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights), because Plaintiff's claims arise under 42 U.S.C. § 12132 (ADA Title II), 42 U.S.C. § 12203 (ADA retaliation and interference), 29 U.S.C. §§ 794 and 794a (Section 504), and 42 U.S.C. § 1983 (First and Fourteenth Amendments).

15. This Court has authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201– 2202 and Federal Rules of Civil Procedure 57 and 65.

16. Venue is proper in this District under 28 U.S.C. § 1391(b) because all Defendants reside in this District and a substantial part of the events giving rise to the claims occurred here.

## IV. STATEMENT OF FACTS

### A. Plaintiff's Disability, Accommodations, and Current Enrollment

17. Plaintiff is a qualified disabled student near completion of his physics degree at MSU Denver. The University had notice of his disability and approved his accommodations through the Access Center. His Spring 2026 accommodations included those listed in Paragraph 4 above.

18. Plaintiff remains an enrolled MSU Denver student. He is presently carrying multiple active, University-controlled course Incompletes — in Thermal Physics (PHY 3411), Electricity & Magnetism II (PHY 4330), and Computational Physics (PHY 4611) — each

of which remains open and completable and each of which MSU Denver presently controls as to deadline and completion path.

19. On or about June 25, 2026, after consultation with the physics chair, Professor Grant Denn agreed to revisit the failing grade previously assigned in PHY-4921 Physics Senior Seminar. On July 7–8, 2026, following an independent faculty review concluding that Plaintiff's submitted work satisfied the posted syllabus, the department directed and the Registrar approved a change of that grade from failing to "A" (Grade Change Request 68097). Plaintiff pleads this correction as a voluntary post-filing change of position, not as an admission of liability; it does not moot Plaintiff's damages. Plaintiff's three remaining course Incompletes remain University-controlled and are set to revert to reduced or non-passing grades absent a safe completion path.

20. Plaintiff was admitted to the University of Colorado for the Fall 2026 term, but cannot transfer or matriculate until he completes his degree at MSU Denver. MSU Denver's present control over Plaintiff's grades, Incompletes, transcript, academic standing, records access, and completion pathways therefore continues to govern whether and when Plaintiff can complete his education.

**B. The Course-Level Accommodation Failure and the Access Center's Non-Enforcement**

21. Under the Access Center's own policy, once accommodations are approved and an Accommodation Notification Letter is issued, those accommodations are implemented as written and are not subject to renegotiation by faculty; students are not required to negotiate their approved accommodations with instructors, and the Access Center is

responsible for ensuring that qualified students receive their accommodations in a timely manner.

22. Plaintiff's approved accommodations, communicated to his instructors by Notification Letter, included advance access to course materials in an accessible, digitally usable format; advance notice for quizzes and examinations; extended time; and a designated testing environment.

23. In the Fall 2024 EET 3110 course (Transform Methods of Circuit Analysis), Professor Julio Proaño failed to implement those approved accommodations. He provided course materials late and in handwritten form that was difficult to read and incompatible with assistive technology; he did not give the advance notice for quizzes and examinations that Plaintiff's accommodations required; and he required Plaintiff to renegotiate accommodations that had already been formally approved. In his own December 24, 2024 written correspondence, Proaño took the position that it was "required for you to ask the instructor for time-outs and time extensions" — placing on Plaintiff the burden of invoking, instructor by instructor, the accommodations the Notification Letter already guaranteed.

24. Defendant-adjacent non-party Gregory Sullivan, Director of the Access Center, held the approval authority over Plaintiff's accommodations and issued the Notification Letter. Beginning in December 2024, Sullivan was placed on direct written notice of Proaño's non-implementation: Plaintiff's contemporaneous correspondence documenting the late, inaccessible materials, the lack of advance quiz notice, and the renegotiation demand was copied to Sullivan.

25. Despite that notice, Sullivan did not intervene to enforce Plaintiff's accommodations, did not correct the renegotiation demand, and did not initiate the reporting or response procedures that University policy requires a responsible employee to trigger upon learning of possible disability discrimination. The approved accommodations were never enforced, and the burden of enforcement was left entirely on Plaintiff.

26. The University thus had actual knowledge — through the Access Center Director it charged with the accommodation function, and through the faculty member to whom the Notification Letter was directed — that Plaintiff's approved accommodations were not being implemented, and it failed to act to correct the failure. This approval-then-notice-then-nonenforcement

sequence is the deliberate indifference on which Plaintiff's Title II and Section 504 claims rest.

**C. The 2024 Student-Conduct Case and the Financial-Aid Directive (Case No. 2024023301)**

27. The conduct matter arose from a Financial Aid dispute. Plaintiff's Pell Grant had been reversed on an erroneous default flag; when Plaintiff went to the Financial Aid office about the error, an interaction with staff led to a student-conduct charge. Defendant McGeehan, Associate Dean of Students, charged, met on, and decided the resulting case.

28. On November 15, 2024, McGeehan conducted the conduct meeting. Plaintiff offered to show his own first-person audio/video recording of the underlying Financial Aid interaction and requested that McGeehan review it; McGeehan declined to do so and proceeded to decide the matter. (This refusal is pleaded on Plaintiff's personal

knowledge of the meeting; it is corroborated by the November 22, 2024 decision's silence as to any recording other than the accuser's.)

29. On November 22, 2024, McGeehan issued a written decision finding Plaintiff “Responsible" for conduct "that a reasonable person would find intimidating, hostile, or offensive," and “Not Responsible" for disruption. The decision's stated rationale was, in McGeehan's words, that “ in reviewing the video shared by Financial Aid," Plaintiff was engaging with staff "in a way that could be seen as intimidating or hostile." The decision identifies only the accuser's video and makes no reference to Plaintiff's offered first-person recording.

30. The same decision imposed a directive designating a named Financial Aid representative as Plaintiff's contact, with a backup, made compliance mandatory and enforceable, and warned that failure to comply "will result in a hold being placed on your MSU Denver account" and could result in resolutions that "may or may not include suspension or expulsion." The decision also represented that "This process was conducted to make sure you were afforded the full extent of due process provided all students."

31. Plaintiff appealed in writing on appeal criteria one and two — that the decision did not consider his video evidence and was not based on substantial evidence.

32. On January 22, 2025, Defendant Martinez, as the assigned University Appeal Officer, denied the appeal. Her decision recited that Plaintiff's appeal was based on the grounds "that the evidence of the video had not been considered," and then concluded that she "understood the video evidence was considered" and did not "find grounds for overturning the decision." Martinez did not identify which video she meant and did not

address that the decision had relied solely on the accuser's video while Plaintiff's first-person recording went unreviewed. Her decision re- affirmed the Financial-Aid directive.

**D. The Directive Remained Operative and Constrains Plaintiff's Access Today**

33. The Financial-Aid directive was never rescinded. On December 15, 2025 — more than a year after it was imposed — McGeehan personally continued to administer it, instructing Plaintiff in writing to "reach out to the initial Financial Aid channels first … before going directly to Tori." No official at the Dean of Students Office or above has rescinded the directive.

34. Because the directive is a mandatory, enforceable disciplinary resolution whose violation is itself a sanctionable offense pre-attached to escalation up to suspension or expulsion, and because its operative standard is undefined and conflicts with McGeehan's own December 2025 instruction, Plaintiff cannot use the ordinary Financial Aid service without exposure to a discretionary finding of noncompliance held by an official the record shows was not impartial toward him. The directive thereby presently chills and constrains Plaintiff's access to a University service.

**E. The Records / CORA Access Failure and the Duty to Preserve**

35. On or about April 13, 2026, Plaintiff asked MSU Denver to identify the disability-access or accommodation process for CORA requests, payment, and records production. The University did not meaningfully identify an accessible process, accommodation contact, or safe route for Plaintiff's disability-related access needs.

36. On or about April 28, 2026, the University stated that records had been retrieved and reviewed but would not be provided unless Plaintiff paid a fee. Plaintiff had asked for clarification of an ambiguous bundled fee demand and the reliability of the search;

the University then stated that no further communication would be forthcoming and treated the requests as closed. Plaintiff continues to lack the requested records access.

37. At all times since litigation became reasonably foreseeable, Defendants have been under a duty to preserve records, communications, metadata, access logs, audit trails, and other electronically stored information concerning Plaintiff's accommodations, complaints, conduct case, records requests, coursework, and academic status, and Plaintiff has repeatedly placed Defendants on notice of that duty. Should discovery reveal that responsive materials have been lost, altered, overwritten, or destroyed, Plaintiff will seek appropriate relief by motion, including sanctions and an adverse inference under Fed. R. Civ. P. 37(e).

**F. The Retained Investigator and the Disclosure of Plaintiff's Diagnosis**

38. MSU Denver, acting through the Office of Equal Opportunity, retained an outside firm to conduct an "assessment" of Plaintiff's matter and transmitted Plaintiff's complaint materials and disability-related information into that outside process. Plaintiff was not given adequate advance disclosure of the investigator's status, the scope-setting process, any conflict screening, or the

relationship between that outside process and the University's internal OEO structure before his sensitive information moved into it.

39. In responding to a Request for Information issued by the Colorado Department of Regulatory Agencies in connection with Plaintiff's administrative complaint, the University, through the Colorado Department of Law, filed a Position Statement that disclosed Plaintiff's specific medical diagnosis — including an interpretive gloss spelling out the diagnostic term — without Plaintiff's consent, while in the same document redacting the identifying information of a third- party classmate. The University thereby used Plaintiff's protected disability-related information against him in a proceeding arising from his own disability-access complaint, when a less- restrictive alternative was demonstrably available and used for a third party.

**G. The President's-Office Escalation and Redirection (Brown)**

40. On or about March 5–6, 2026, Plaintiff escalated his disability-access and process-safety concerns to the Office of the President — addressed to the President, the Provost, and the Interim Dean — seeking neutral oversight above the OEO and Dean-of-Students structures that he alleged were themselves implicated. In that escalation, Plaintiff formally documented that the University's ongoing administrative actions had become medically dangerous: his physician had warned the University that the situation posed a serious health risk, and the resulting stress had already produced a hypertensive crisis requiring hospitalization, with contemporaneously recorded blood-pressure readings reaching 171/111. Defendant Brown, Chief of Staff, personally received that escalation.

41. In a written response dated March 9, 2026, Brown told Plaintiff that the Office of Equal Opportunity "is the only mechanism available to you for filing a complaint of discrimination with the University," that "The OEO is your sole contact related to this matter," and that “there will be no additional correspondence from this office regarding your complaint at this time.” Brown thereby redirected Plaintiff's petition for neutral oversight back into the same OEO structure Plaintiff alleged was implicated, and foreclosed further recourse to the Office of the President — doing so with actual notice that the matter concerned Plaintiff's disability accommodations and medical safety, and after Plaintiff had raised, on March 6, 2026, that his prior disability-related communications had been shared with the Dean of Students Office without his consent.

**H. Dean-of-Students Contact and Intimidation (Tackett)**

42. Plaintiff's communication to the President's Office requested awareness and oversight only; it did not request intervention in any disciplinary or administrative process, and it complained of the conduct of the Dean of Students Office. Shortly after Plaintiff sent it, Defendant Tackett — the head of the very office complained of — contacted Plaintiff and stated that he had “learned about the concerns recently shared with the President's Office."

43. Plaintiff had not authorized the disclosure of that communication, which contained disability- status and safety information, to the Dean of Students Office. The rapid appearance of the complained-of office in response to a communication intended for senior leadership, and its head's direct outreach referencing the protected communication, reasonably conveyed to Plaintiff that no safe internal channel existed to seek oversight without his concerns being returned to the office he was complaining

about. Plaintiff contemporaneously documented this concern in a written notice dated March 6, 2026 to the President, the Provost, and the Interim Dean, formally objecting that his disability-related communications had been shared with the Dean of Students Office without his consent.

**I. The Academic Access Collapse and Constructive Withdrawal**

44. A final academic-access breakdown occurred in PHY-4921 Physics Senior Seminar in Spring 2026, in which Plaintiff's accommodations were active. The posted course description permitted "a literature search on a topic of current physics" and "a detailed technical report, computational model, or equivalent analysis," and did not state that experiments or simulations were the only acceptable form of work.

45. Plaintiff submitted a draft titled "Magnetically Guided Nanoparticle Therapy for Alzheimer’s Disease: A Conceptual Multimodal Strategy." On or about May 5, 2026, Dr. Grant Denn responded that the submission was not a results-based physics paper and required original research, experiments, or simulations — imposing expectations narrower than the posted description, at the final stage of the semester, without meaningfully engaging the accommodation framework. (As alleged in Paragraph 19, this grade was later changed to an "A" after independent faculty review.)

46. On or about May 6, 2026, Plaintiff notified his professors that he could no longer safely continue under the existing conditions. This was a constructive withdrawal caused by disability- access failures, unsafe process access, unresolved records barriers, retaliation and interference, and the absence of a reliable completion path — not a voluntary abandonment of his education.

Professor James Dove's offer of an Incomplete in Thermal Physics, and a colleague's offer of Incomplete-("C") status in two additional courses, confirmed that feasible preservation paths existed.

## V. CLAIMS FOR RELIEF

### CLAIM ONE — Title II of the ADA (42 U.S.C. § 12132): Denial of Equal Access and Failure to Accommodate

(Against the Board of Trustees for damages and prospective relief; against the official-capacity Defendants for prospective relief)

47. Plaintiff incorporates each preceding paragraph.

48. Title II prohibits a public entity from excluding a qualified individual with a disability from participation in, denying the benefits of, or subjecting that person to discrimination in its services, programs, or activities.

49. Plaintiff is a qualified individual with a disability who, with reasonable accommodations, was qualified to participate in MSU Denver's academic programs, complaint systems, records processes, and educational services.

50. The Board, through MSU Denver, denied Plaintiff equal access by failing to implement his approved accommodations effectively — including the late, handwritten, and assistive- technology-incompatible materials, the absence of required advance quiz and exam notice, and the demand that Plaintiff renegotiate already-approved accommodations, as set forth in Paragraphs 21–26 — by failing to enforce those accommodations after the Access Center Director was placed on direct notice of the failure, by failing to provide accessible records and complaint processes, by imposing and maintaining the Financial-Aid directive that constrains his access to a University

service, and by failing to provide a safe, accessible path to complete his coursework after disability-related barriers escalated.

51. These failures were the product of deliberate indifference: through the Access Center Director who approved the accommodations and was then placed on written notice of their non- implementation, and through the officials who received Plaintiff's later escalations, the University had actual knowledge of Plaintiff's disability, his approved accommodations, and the access failures, and failed to act. Plaintiff suffered injury, including lost educational access, academic harm, and emotional and physical distress, including a documented hypertensive crisis requiring hospitalization. Plaintiff is entitled to compensatory damages against the Board to the extent allowed by law and to the prospective relief set forth below.

**CLAIM TWO — Section 504 of the Rehabilitation Act (29 U.S.C. § 794): Denial of Equal Educational Access and Failure to Accommodate**

(Against the Board of Trustees for damages and prospective relief; against the official-capacity Defendants for prospective relief)

52. Plaintiff incorporates each preceding paragraph.

53. Section 504 prohibits discrimination against an otherwise qualified individual with a disability under any program or activity receiving federal financial assistance. The Board receives federal financial assistance.

54. The University knew Plaintiff was disabled, had approved accommodations, and needed accessible academic and administrative processes, and nonetheless denied him equal educational access — including through the course-level accommodation failure and the Access Center’s non-enforcement after notice set forth in Paragraphs

21–26, and through its failure to provide clear academic expectations, accessible records and complaint access, and non-punitive completion pathways — acting with deliberate indifference.

55. Plaintiff suffered academic harm, emotional and physical distress including a documented hypertensive crisis requiring hospitalization, loss of safe participation, constructive withdrawal, and ongoing transcript, Incomplete, transfer, financial-aid, and academic-status risk. Plaintiff is entitled to compensatory damages to the extent allowed by law and to prospective relief.

**CLAIM THREE — ADA and Section 504 Retaliation and Interference (42 U.S.C. § 12203; 29 U.S.C. § 794)**

(Against the Board of Trustees for damages and prospective relief; against the official-capacity Defendants for prospective relief)

56. Plaintiff incorporates each preceding paragraph.

57. Plaintiff engaged in protected activity by requesting accommodations, reporting accommodation failures, opposing discrimination and retaliation, seeking records, requesting accessible process information, filing civil-rights complaints, and filing in federal court.

58. After Plaintiff engaged in protected activity, the University restricted, delayed, narrowed, or closed access to records and process information he needed; disclosed his protected disability- related information against him in the proceeding arising from his own complaint; and allowed its complaint, OEO, records, academic, and disability-information processes to become more unsafe, opaque, or inaccessible. These actions

would dissuade a reasonable disabled student from continuing to request accommodations, report discrimination, seek records, or use complaint processes.

59. Defendants further interfered with Plaintiff's exercise and enjoyment of ADA and Section 504 rights by failing to provide safe, accessible, and non-retaliatory pathways for accommodation, records access, complaint participation, and academic completion. Plaintiff is entitled to damages to the extent allowed by law and to prospective relief.

**CLAIM FOUR — 42 U.S.C. § 1983; Fourteenth Amendment Procedural Due Process (Official Capacity — Prospective Relief)**

(Against Defendants Davidson, Makley, Ranta-Curran, and Sanders in their official capacities)

60. Plaintiff incorporates each preceding paragraph.

61. The official-capacity Defendants act under color of state law. Plaintiff has protected interests in accurate academic records, in non-punitive treatment of his disability-related constructive withdrawal, and in continued access to public educational programs and services.

62. MSU Denver maintains a continuing policy or practice of treating Plaintiff's disability-related constructive withdrawal as ordinary nonparticipation, abandonment, or academic failure, and of maintaining the unrescinded Financial-Aid directive, without an accessible process to preserve academic status, protect the Incompletes, correct transcript consequences, obtain necessary records, or complete remaining work safely.

63. Plaintiff seeks prospective declaratory and injunctive relief against the official-capacity Defendants to stop and correct this ongoing deprivation, including rescission or

clarification of the Financial-Aid directive so that ordinary use of the Financial Aid service is not a sanctionable act.

**CLAIM FIVE — 42 U.S.C. § 1983; Fourteenth Amendment Procedural Due Process (Individual Capacity — Damages)**

(Against Defendants McGeehan and Martinez in their individual capacities)

64. Plaintiff incorporates each preceding paragraph.

65. Defendants McGeehan and Martinez acted under color of state law in adjudicating and reviewing Plaintiff's student-conduct case. Plaintiff had a protected interest in a conduct process and appeal conducted with the basic procedural fairness the University's own rules require, free of a decision-maker who refused to consider his exculpatory evidence and an appeal officer who ratified that refusal without independent review.

66. McGeehan deprived Plaintiff of procedural due process by deciding the matter on the accuser's video alone after Plaintiff offered, and McGeehan declined to review, Plaintiff's own first-person recording — reaching an adverse "responsible" finding without considering material exculpatory evidence — and by imposing an enforceable directive constraining a University service, all while representing that Plaintiff received "the full extent of due process."

67. Martinez deprived Plaintiff of procedural due process by failing to conduct the independent, substantial-evidence review the appeal criteria require: presented with an appeal squarely asserting that Plaintiff's video had not been considered, she affirmed that "the video evidence was considered" without identifying which video or addressing

that only the accuser's recording had been reviewed, thereby ratifying the underlying defect rather than correcting it, and re- affirming the Financial-Aid directive.

68. These deprivations caused Plaintiff injury, including the disciplinary record and directive that continue to affect him, and emotional and physical distress. Plaintiff is entitled to compensatory and punitive damages against McGeehan and Martinez in their individual capacities.

**CLAIM SIX — 42 U.S.C. § 1983; First Amendment Retaliation (Individual Capacity — Damages)**

(Against Defendants Brown and Tackett in their individual capacities)

69. Plaintiff incorporates each preceding paragraph.

70. Plaintiff engaged in activity protected by the First Amendment, including petitioning the Office of the President for redress and neutral oversight of his disability-access and process- safety concerns.

71. Defendant Brown, acting under color of state law, took adverse action against Plaintiff in response: he received Plaintiff's petition and, rather than provide or route the requested oversight, told Plaintiff the OEO "was the only avenue," redirected him back into the very structure he sought oversight of, and supplied materially incorrect channeling information that obstructed his protected activity.

72. Defendant Tackett, acting under color of state law, took adverse action against Plaintiff in response to the same protected petitioning: upon learning of Plaintiff's confidential escalation — an escalation complaining of Tackett's own office — Tackett initiated direct, unsolicited contact referencing that protected communication,

reasonably conveying that no internal channel existed to seek oversight without the concern being returned to the office complained of.

73. Each Defendant's action would chill a person of ordinary firmness from continuing to petition for redress, and each was substantially motivated by Plaintiff's protected activity. Plaintiff suffered injury and is entitled to compensatory and punitive damages against Brown and Tackett in their individual capacities.

## E. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

### Declaratory Relief

A. Declare that Defendants' treatment of Plaintiff's disability-related constructive withdrawal, academic status, transcript, Incompletes, records access, financial-aid status, and completion pathway violates Title II and Section 504 unless corrected through accessible, non-retaliatory relief;

B. Declare that Defendants retaliated against, interfered with, or constructively excluded Plaintiff after his protected activity;

C. Declare that the November 22, 2024 conduct decision and the January 22, 2025 appeal denial deprived Plaintiff of procedural due process, and that Defendants Brown and Tackett retaliated against Plaintiff's protected activity;

### Injunctive / Prospective Relief

D. Order Defendants to preserve Plaintiff's academic status and prevent punitive academic, transcript, registration, transfer, financial-aid, or academic-standing consequences arising from the disability-related constructive withdrawal;

E. Order Defendants to protect and provide a safe, accessible, non-retaliatory path for Plaintiff to complete the Thermal Physics, Electricity & Magnetism II, and Computational Physics Incompletes within a reasonable period;

F. Order Defendants to rescind or clarify the Financial-Aid directive imposed in Case No. 2024023301 so that ordinary use of the Financial Aid service is not treated as a Code of Conduct violation, and to provide a safe, accessible, conflict-free point of contact for Plaintiff's accommodation, academic-status, records-access, transcript, financial-aid, and completion-path needs;

G. Order Defendants to provide Plaintiff accessible records and process information, including the CORA materials previously withheld, and to preserve all records and electronically stored information concerning Plaintiff's accommodations, complaints, records requests, conduct case, coursework, and academic status;

**Damages**

H. Award compensatory damages against the Board of Trustees under Title II and Section 504, to the extent allowed by law;

I. Award compensatory and punitive damages against Defendants McGeehan and Martinez in their individual capacities under 42 U.S.C. § 1983 (procedural due process);

J. Award compensatory and punitive damages against Defendants Brown and Tackett in their individual capacities under 42 U.S.C. § 1983 (First Amendment retaliation);

**Other**

K. Award Plaintiff his costs and any attorney's fees and expenses available by law, including under 42 U.S.C. § 12205, 29 U.S.C. § 794a, and 42 U.S.C. § 1988;

L. Grant such other and further relief as the Court deems just and proper.

## VII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims and issues so triable.

## VERIFICATION

I declare under penalty of perjury under 28 U.S.C. § 1746 that I am the plaintiff in this action, that I have read this Third Amended Complaint, and that the factual statements made on personal knowledge are true and correct, and those stated on information and belief I believe to be true.

Dated: July 9, 2026

Respectfully submitted,

s/ Timothy J. Christensen

Timothy J. Christensen
Plaintiff, pro se
10987 East Crestline Circle
Englewood, CO 80111
TJHVACRLLC@gmail.com