**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-01395-PAB-CYC

TIMOTHY J. CHRISTENSEN,
Plaintiff,
v.
THE BOARD OF TRUSTEES OF METROPOLITAN STATE UNIVERSITY OF DENVER, et al.,
Defendants.

---

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS (ECF 53)

---

Plaintiff Timothy J. Christensen, proceeding pro se, respectfully submits this Response in Opposition to Defendants' Motion to Stay Proceedings, ECF 53 ("Stay Motion" or "Stay Mot."), and states as follows.

## CONFERRAL

Defendants' certificate states that counsel conferred with Plaintiff on September 3, 2026, and that "Plaintiff opposes the relief sought herein." Stay Mot. at 1. The record adds four things. First, the September 3 email described the anticipated motion as a "motion to stay discovery." [Ex. 14, Beck email 9/3/26.] One day later, counsel certified in another filing that they had "attempted to confer with Plaintiff via email on September 3, 2026," and that "[a]s of this filing, Plaintiff has not indicated his position on this motion." ECF 45 at 1 (filed Sept. 4, 2026) — less than a day after the email, on a motion Plaintiff ultimately did not oppose, ECF 46 (filed Sept. 7, 2026). Second, Plaintiff's opposition was not a bare objection: on September 5, 2026, he stated it in writing with

its grounds — "the proximity of limitations deadlines applicable to the claims arising from the November 2024–January 2025 conduct proceedings, the ongoing nature of the harm pleaded in the operative complaint, and Plaintiff's documented record-preservation concerns" — and asked counsel to confirm whether the anticipated motion would stay only discovery, or also the case-management calendar. (Decl. ¶ 11.) Third, the request to vacate the October 13, 2026 Scheduling Conference and stay the proposed-scheduling-order requirements was first disclosed in counsel's September 9 reply — after the cited conferral and one day before filing. [Ex. 16, Beck email 9/9/26.] Fourth, when counsel wrote that a stay "should not have any impact on the statute of limitations for your claims," Plaintiff disagreed in writing the same day: a stay "is not limitations-neutral with respect to approaching deadlines the scheduling conference exists to calendar." [Ex. 17, Plaintiff's reply 9/9/26.] The Court should not understand the September 3 conferral as covering relief first disclosed on the eve of filing.

**INTRODUCTION**

1. Defendants ask this Court to freeze this action — all discovery and every case-management deadline — on the premise that their motion to dismiss may dispose of the entire action. Stay Mot. at 2, 5. That premise fails on Defendants' own papers. This Motion itself states the claim map correctly: Claim Five is pleaded against Defendants McGeehan and Martinez, and Claim Six against Defendants Tackett and Brown. Stay Mot. at 1–2. The motion to dismiss does not analyze what this Motion describes: its Claim Five merits section seeks dismissal of "monetary damages against Defendants McGeehan and Tackett," Defs.' Mot. to Dismiss, ECF 52 ("MTD"), at 12 — a defendant

pair that claim does not contain — and Defendant Martinez's conduct is addressed once in the Motion's twenty-four pages, in a single conclusory sentence, MTD at 15; it applies a single "materially adverse action" template that never addresses Claim Three's interference theory under 42 U.S.C. § 12203(b); and it treats the disability claims as damages-only, leaving the prospective relief sought by Claims One through Three unopposed. See Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss, ECF 56 (filed Sept. 13, 2026) ("MTD Opp."), Preliminary Statement ¶¶ 1–2. A stay premised on wholesale disposition cannot rest on a motion that, as filed, does not attempt it.

2. The Motion's only engagement with prejudice is one sentence: Plaintiff's interest "lies largely in his academic plans for the fall 2026 semester." Stay Mot. at 3. The Court has since vacated the October 13, 2026 Scheduling Conference and set this Motion for hearing on November 10, 2026. ECF 55. The requested stay itself remains pending. The quoted sentence is silent as to every dated harm Plaintiff will show: two limitations periods that expire November 15/22, 2026 and January 22, 2027 ; a University-controlled course Incomplete that converts to a default grade of D on December 3, 2026 — ten days before the Fall 2026 semester even ends — and cannot thereafter be corrected by completed work under the University's own grade-change rules; a public-records channel the University closed in writing on April 28, 2026; and a disciplinary directive that remains operative and is still being administered by its author. (Decl. ¶¶ 2–9; Exs. 1–13.) A stay of even ordinary length runs through every one of those dates. That is not a pause; it is preclusion with a caption.

**LEGAL STANDARD**

3. A stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket," Landis v. N. Am. Co., 299 U.S. 248, 254 (1936), but it is not the default — and the quoted economy runs "for itself, for counsel, and for litigants" alike, Plaintiff included. Id. The movant "must make out a clear case of hardship or inequity in being required to go forward," at least where "there is even a fair possibility that the stay for which he prays will work damage to some one else." Landis, 299 U.S. at 255. The Court weighs the five String Cheese factors, which Plaintiff addresses in order below. String Cheese Incident, LLC v. Stylus Shows, Inc., No. 1:02-CV-01934-LTB-PA, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006). Defendants' own dispositiveness authority is twice-conditional: a stay "may be appropriate if resolution of a preliminary motion may dispose of the entire action." Stay Mot. at 2 (quoting Serv. First Permits, LLC v. Lightmaker Vancouver (Internet) Inc., No. 18-cv-02089-CMA-NYW, 2019 WL 109335, at *3 (D. Colo. Jan. 4, 2019)). As shown in the Introduction, that condition fails on Defendants' own papers. And none of Defendants' authorities addresses their distinct request to vacate case-management deadlines: they are discovery-stay cases, and the docket-control answer to a pending dispositive motion is scheduling, not suspension.

## ARGUMENT

### I. The prejudice to Plaintiff is dated, documented, and unanswered.

4. Limitations deadlines. Claims arising from the November 15 and November 22, 2024 conduct proceedings reach their two-year outer dates on November 15 and 22, 2026; the January 22, 2025 appeal denial reaches its outer date January 22, 2027.

(Decl. ¶ 1.) Defense counsel has suggested the stay "should not have any impact on the statute of limitations for your claims." [Ex. 16, Beck email 9/9/26.] That is true only of claims already pleaded against parties already named. Plaintiff intends to seek leave to add three additional defendants whose claims arise from the same November 2024–January 2025 conduct proceedings; as to them, the November 15 and 22, 2026 dates are not approaching — they are dispositive. (Decl. ¶ 1.) The scheduling conference is the ordinary mechanism for calendaring amendment and joinder deadlines. The Court's November 10 hearing setting sharpens the problem: it is five days before the first November limitations date and twelve days before the second, and ECF 55 provides only that the conference will be reset if the stay is denied. An unconditioned stay therefore means no amendment-and-joinder deadline is set while the limitations periods on Plaintiff's remaining claims expire. And the Court's present order compounds it: even outright denial at the November 10 hearing leaves the conference to be reset only "at that time," ECF 55 — five days before the first limitations date, with no calendared path to complete the pleadings before it passes. A stay is not limitations-neutral to a plaintiff whose case-management calendar is the only mechanism for timely completing his pleadings.

5. Under the University's published policies, incomplete work "must be completed within one calendar year or earlier, at the discretion of the faculty member" — and Plaintiff's Incomplete Agreement Form fixes the earlier date, December 3, 2026, and the default grade of D. (Ex. 2.) Once a grade is submitted, "[g]rades may NOT be changed on the basis of . . . additional work undertaken or completed after grades are submitted to the Office of the Registrar"; they "may only be changed on the basis of an error in

evaluation, computation, or transcription." MSU Denver Catalog, Grades and Notations (Incomplete) and Grade Change [Ex. 3, catalog excerpts]. On September 13, 2026, Plaintiff asked Defendants to agree to preserve the status quo of that Incomplete — that the December 3 conversion not take effect and the Incomplete remain open — an accommodation costing Defendants nothing. Defendants have not responded. Ex. 13.

6. Investigative preclusion — the one channel left does not function. With discovery stayed, Plaintiff's only extrajudicial channel for obtaining records is the Colorado Open Records Act. The record shows that channel has not functioned. The requests themselves had anticipated the objection. They sought the timeline of decisions concerning Plaintiff — when the conduct proceedings, the communication restrictions, the appeal review and outcome, and any escalation to senior leadership were first discussed, proposed, approved, and implemented, and who was involved — and they expressly disclaimed attorney-client privileged material and work product, requested reasonably segregable non-exempt portions, and asked that any withholding identify the specific statutory exemption and the record's sender, recipient, date, and subject. [Ex. 4, CORA request (Timeline of Decisions and Actions).] The response was categorical anyway: "Any of the correspondences you have requested between MSU Denver's General Counsel's office, and others, is attorney-client privileged and won't be provided to you" — reaffirmed the next day as to "all communications between General Counsel and [individuals] at MSU Denver" — with no exemption identified, no segregability determination, and no record-specific index. [Ex. 5, Randol emails 3/30–31/26.] On April 27, 2026, Plaintiff submitted eleven written, request-specific questions about the University's search — the offices and custodians searched, the search terms

and name variants used, whether responsive records had been located, whether any were being withheld — and gave express written notice to preserve the records of the search itself. [Ex. 6, Plaintiff's email 4/27/26.] The response, the next morning, was closure: pay a "$41.37 research, retrieval, and review fee" or receive nothing, with "no additional communication or information forthcoming related to your requests or last email and the University considers the request closed." [Ex. 7, Randol email 4/28/26.] That same morning, the University requested and received an extension of time — to May 20, 2026 — to respond to Plaintiff's pending civil-rights charge before the Colorado Civil Rights Division. [Ex. 8, CCRD investigator email 4/28/26, 8:42 a.m.; compare Ex. 7, 10:14 a.m.] The University obtained time from one channel while closing another. Plaintiff proceeds in forma pauperis in this Court. And Defendants' counsel were told directly — at the parties' Rule 26(f) conference on August 17, 2026 — that Plaintiff's records channel had closed and that he did not believe discovery could proceed honestly without this Court's supervision. (Decl. ¶ 6.) The Motion does not mention any of it; its silence on the closed channel is not ignorance. The combined effect of a stay and a non-functioning records channel is that Plaintiff cannot investigate his own case at all, for the stay's duration, while Defendants hold the records.

7. Ongoing harm and evidence atrophy — documented, not speculative. The Financial-Aid directive remains operative; its author continued to administer it in writing as of December 15, 2025. TAC ¶ 33. Recordings, access logs, and similar evidence are subject to ordinary retention cycles, and Plaintiff's preservation notices are on file. (Decl. ¶ 9.) The risk is not hypothetical. On March 30, 2026, Plaintiff notified Defendant Ranta-Curran and the University's external investigator in writing that her public attorney-

registration listing identified her association with Employment Matters LLC, and requested preservation of all related records, including metadata, access logs, and transmission records. (Decl. ¶ 7; Ex. 9.) Four days later, the firm name and business address no longer appeared on that listing; the license status — already inactive — was unchanged. (Decl. ¶ 7; Exs. 10–11.) Plaintiff does not ask the Court to characterize the change; he notes it because records bearing on this litigation have changed while preservation requests were outstanding — which is why preservation should be ordered rather than assumed. The same is true of witnesses: a fellow student with relevant knowledge has stated in writing that he is "genuinely concerned that reporting this through standard channels … would result in retaliation against my academic standing." (Decl. ¶ 8.) Delay consumes evidence while it consumes the calendar, and it chills witnesses while the Court's processes are suspended.

**II. The burden on Defendants is overstated, and it cannot justify a total stay.**

8. Defendants' burden argument rests entirely on qualified immunity. Stay Mot. at 3–4 (citing Siegert v. Gilley, 500 U.S. 226, 231 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); Ashcroft v. Iqbal, 556 U.S. 662, 685–86 (2009)). Their own framing concedes its limits: the burden falls "particularly [on] the four Defendants sued in their individual capacities." Stay Mot. at 3. Qualified immunity protects those four defendants on two of six claims. It has no application to the Board of Trustees (Claims One through Three) or to the official-capacity claims for prospective relief (Claim Four) — the bulk of the case. A total stay of all proceedings thus extends the asserted discovery-immunity of four individuals over parties and claims that have no such immunity at all. See Rome v. Romero, 225 F.R.D. 640, 643 (D. Colo. 2004) (qualified immunity is "available only to

individual government officials, not governmental entities," is "applicable only against claims for monetary damages," and does not reach official-capacity claims (citing Meiners v. Univ. of Kan., 359 F.3d 1222, 1233 n.3 (10th Cir. 2004))); Estate of Melvin v. City of Colo. Springs, No. 20-cv-00991-CMA-MDB, 2022 WL 3975033, at *2 (D. Colo. Sept. 1, 2022) (the "invocation of qualified immunity, in and of itself, does not warrant a [blanket] stay of discovery"). Defendants' only answer is Iqbal's observation that even a partial discovery stay burdens individual officials, Stay Mot. at 4 (quoting 556 U.S. at 685–86) — but that logic protects against discovery, full stop. It supplies no justification for the far broader relief Defendants actually seek: vacating case-management deadlines, freezing amendment and joinder while limitations periods run, and staying claims against parties with no immunity to assert. And the Motion's closing move shifts the burden outright — Plaintiff "cannot demonstrate that discovery is warranted despite this burden," Stay Mot. at 4 — where Landis places it on the movant. 299 U.S. at 255.

9. Three features of Defendants' own authority confirm the limit. First, Puerto Rico Aqueduct's warning that qualified immunity's value is "lost as litigation proceeds past motion practice," Stay Mot. at 3–4, identifies its own remedy: prompt decision of the motion — which requires briefing, not a suspended calendar. The motion to dismiss will be fully briefed before the November 10 hearing. Second, Defendants' lead prejudice authority proves the same point: Boodrookas v. Mollendor, No. 25-CV-01509-PAB-KAS, 2025 WL 3166786, at *2 (D. Colo. Nov. 12, 2025), stayed *discovery* only, and required a joint status report within fourteen days of any order that did not fully dispose of the case. That is the architecture of Section V below — not of this Motion. Third, the Motion identifies no specific burden at all: no pending discovery request, no noticed deposition,

no dated obligation. No discovery is open; the only instrument this Motion operates on today is the case-management calendar itself. Its asserted hardship is a conditional — "if … their pending Motion to Dismiss is later granted," Stay Mot. at 4 — while Plaintiff's prejudice is a calendar. And even on Defendants' best day — dismissal of both individual-capacity claims — Claims One through Three proceed against the Board on University-held records: the directive's issuance and administration, Access Center communications, retention logs, and the Incomplete paperwork. That discovery occurs under every scenario; a total stay saves Defendants nothing but the calendar.

10. Defendants also suggest Plaintiff "has not consistently taken steps to advance this litigation," pointing to three amendments. Stay Mot. at 3. The record shows the opposite. Two of the three amendments were filed as of right before any responsive pleading; the third was filed by leave of Court, ECF 28, 43, and docketed August 11, 2026, ECF 44, following service on July 30, 2026 — a date the Stay Motion itself supplies, Stay Mot. at 3. The Court has already evaluated Plaintiff's litigation conduct: in denying his motion for appointment of counsel as premature, the Court observed that Plaintiff's "filings demonstrate his ability to navigate this litigation" and that his successful amendments "result[ed] in this case moving forward," ECF 24 at 3, and described the case as "not overly complex from a reading of the amended complaint." Id. at 4. Plaintiff has filed notices of non-opposition to Defendants' procedural motions, ECF 42, 46 — the latter on a federal holiday; the parties' Rule 26(f) conference occurred on Defendants' own extension schedule, ECF 40, 43; and Defendants used the full extended schedule they requested, filing their dispositive motion and this Motion together on its final day. Diligence is not measured by the number of amendments; it is

measured by responsiveness, and Plaintiff's record on that measure is unblemished. The prejudice Defendants claim remains prospective; Plaintiff's is calendared.

**III. Judicial economy favors a preserved case-management path, not an unconditioned stay.**

11. Defendants also asked the Court to vacate the Scheduling Conference and "all upcoming case management deadlines." Stay Mot. at 5 — the same calendar Defendants' own counsel was planning around as late as August 11, 2026, when counsel scheduled the Rule 26(f) conference "well in advance of our October deadline to submit the proposed Scheduling Order." (Decl. ¶ 10; Ex. 12.) The Court has now vacated the conference and set the stay motion for hearing on November 10, 2026. ECF 55. That order does not resolve Defendants' broader request to stay proceedings, and its timing creates a case-management problem: the hearing is five days before the first November limitations date, the order contemplates resetting the scheduling conference only "at that time" if the stay is denied — a mechanism that cannot calendar an amendment deadline before November 15 even if Plaintiff prevails — and it is silent as to the associated October 6 proposed-scheduling-order deadline. Defendants' authorities for this factor address motions that "implicate the court's ability to adjudicate all or part of the lawsuit," Stay Mot. at 5 (quoting Ashley v. Kellerman, No. 1:25-CV-02673-PAB-SBP, 2025 WL 3170802, at *3 (D. Colo. Nov. 13, 2025)) — jurisdictional and justiciability challenges. ECF 52 raises none; its issues are fact-laden and party-specific. And the clarity Defendants invoke — "which of Plaintiff's claims, if any, will move forward," Stay Mot. at 4 (quoting Colo. Spgs. Fellowship Church v. Williams, No. 19-CV-02024-WJM-KMT, 2020 WL 6487420, at *3 (D. Colo. Nov. 3, 2020)) — is a

decision's product, not a stay's: by the November 10 hearing the motion to dismiss will be fully briefed, the Court can measure the stay's dispositiveness premise against the parties' briefing rather than the Motion's own characterization of it, and on Defendants' own papers some claims proceed regardless. Judicial economy is therefore served by preserving a path now — setting an amendment-and-joinder deadline on the present record, directing the parties to submit a revised proposed scheduling order, or conditioning any stay on preservation of the status quo and a prompt status report. Those measures cost the Court little, prejudice Defendants not at all, and preserve every party's — and this Court's — options. A stay "is immoderate, and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits." Landis, 299 U.S. at 257.

**IV. The interests of non-parties and the public do not favor a stay.**

12. Defendants invoke the public interest in "conserving public resources." Stay Mot. at 5 (quoting Eggert ex rel. Eggert v. Chaffee Cnty., No. 10-CV-01320-CMA-KMT, 2010 WL 3359613, at *4 (D. Colo. Aug. 25, 2010)). The quotation they select elsewhere pairs "efficient" with "just": the public's interest is "an efficient and just resolution." Colo. Spgs. Fellowship Church, 2020 WL 6487420, at *3. A stay that lets limitations periods and the December 3 conversion decide claims in advance is efficient and unjust in equal measure. And if "conserving public resources" sufficed, every action against a public entity would be stayed as a matter of course; the factor requires more than the defendant's public status. The public also has an interest in the timely adjudication of civil-rights claims against its public institutions — particularly where delay itself produces the harms alleged, and where the prospective relief sought would change

University practice beyond this case. No third party's interest is served by letting December 3 pass unexamined.

**V. If the Court stays anything, it should stay narrowly and condition the stay.**

13. Plaintiff's primary request is denial. If the Court is inclined to stay, the record supports only a narrow, conditioned stay:

- (a) discovery stayed at most as to the four individual-capacity defendants, with Claims One through Four proceeding to case management;
- (b) an order preserving the status quo of Plaintiff's three University-controlled Incompletes — including the December 3, 2026 conversion — pending resolution of the motion to dismiss;
- (c) a preservation order covering the materials identified in Plaintiff's preservation notices, including the video of the Financial Aid interaction referenced in the November 22, 2024 conduct decision, the conduct file, the transmittal chain between the Financial Aid office and the Dean of Students office, and the investigative file and all transmittal and routing records among the University, Employment Matters LLC, and Flynn Investigations Group LLC, including metadata and access logs (Decl. ¶¶ 7, 9);
- (d) notwithstanding the vacated conference, a joinder-and-amendment deadline set on the present record — or set at the November 10 hearing itself — and any stay expressly preserving Plaintiff's ability to seek leave to amend before the November limitations dates; and
- (e) a status-report cadence — as in Boodrookas — so the action cannot remain stayed past the limitations dates identified above without the Court's attention.

## CONCLUSION

14. Defendants' Motion to Stay should be denied. In the alternative, any stay should be limited and conditioned as set forth above.

DATED this 13th day of September, 2026.

Respectfully submitted,

/s/ Timothy J. Christensen
Timothy J. Christensen
Plaintiff, pro se
10987 East Crestline Circle
Englewood, CO 80111
Telephone: 983-214-9249
Email: TJHVACRLLC@gmail.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-01395-PAB-CYC

TIMOTHY J. CHRISTENSEN,
Plaintiff,
v.
THE BOARD OF TRUSTEES OF METROPOLITAN STATE UNIVERSITY OF DENVER, et al.,
Defendants.

---

**DECLARATION OF TIMOTHY J. CHRISTENSEN IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS (ECF 53)**

---

1. I am the Plaintiff. I make this declaration on personal knowledge. The limitations dates referenced in the Response — November 15 and 22, 2026, and January 22, 2027 — are calculated from the November 15 and November 22, 2024 conduct proceedings and the January 22, 2025 appeal denial. I intend to seek leave to add three additional defendants whose claims arise from the same proceedings.

2. I am a currently-enrolled senior at MSU Denver, Physics B.S. program. [Ex. 1 — Degree Works audit, 8/7/26.]

3. I carry three active, University-controlled course Incompletes: PHY 3411 (Thermal Physics), PHY 4330, PHY 4611. [Ex. 1; Ex. 2 — Incomplete Agreement Form.]

4. Completing that work is not presently open to me. The November 22, 2024 directive restricts the communications through which completion arrangements would ordinarily be made, and the University has provided me no path to complete the work while this case has been pending. I also cannot safely appear on campus to sit for the

final examination: the risk of further retaliation and the medical risk are documented, and my treating physician has advised against it as a result.

5. My CORA requests sought the timeline of decisions concerning me — when the conduct proceedings, the communication restrictions, the appeal review and outcome, and any escalation to senior leadership were first discussed, proposed, approved, and implemented, and who was involved. They expressly disclaimed attorney-client privileged material and work product, requested reasonably segregable non-exempt portions, and asked that any withholding identify the specific statutory exemption and the record's sender, recipient, date, and subject. [Ex. 4 — CORA request (Timeline of Decisions and Actions).] On March 30–31, 2026, the University's records custodian responded by asserting that all correspondence involving the General Counsel's office was attorney-client privileged and would not be provided. [Ex. 5 — Randol emails 3/30–31/26.] On April 27, 2026, I submitted eleven written, request-specific questions about the search and gave express written preservation notice. [Ex. 6.] On April 28, 2026, the University demanded a $41.37 fee and stated that "no additional communication or information forthcoming related to your requests or last email and the University considers the request closed." [Ex. 7 — Randol email, 10:14 a.m.] That same morning, at 8:42 a.m., the Colorado Civil Rights Division's investigator informed me the University had requested and received an extension to May 20, 2026, to respond to my pending charge of discrimination. [Ex. 8 — Beston email.]

6. On August 17, 2026, during the parties' Rule 26(f) conference, I informed Defendants' counsel that the University had closed my CORA records channel, that I

proceed in forma pauperis and cannot pay the demanded fee, and that I did not believe discovery could proceed honestly without the Court's supervision.

7. On March 30, 2026, I notified Defendant Ranta-Curran and external investigator David Vogel in writing that her public attorney-registration listing identified her association with Employment Matters LLC, and requested preservation of all related records including metadata, access logs, and transmission records. [Ex. 9.] My capture of that listing at 10:55 a.m. that day showed Firm Name: Employment Matters LLC, with a business address and phone number. [Ex. 10.] On April 3, 2026, at 4:58 p.m., I captured the same listing: the firm name and business address no longer appeared; the license status, already inactive, was unchanged. [Ex. 11.]

8. On April 8, 2026, William McEwen, a fellow MSU Denver student, provided me a written account of an interaction at the Access Center concerning the security of his medical information, in which he states that he is "genuinely concerned that reporting this through standard channels like the OEO would result in retaliation against my academic standing at MSU Denver." The account is retained and will be produced upon request or for in camera review.

9. The Financial-Aid directive imposed November 22, 2024 has never been rescinded; on December 15, 2025, Associate Dean McGeehan continued to administer it in writing. [Ex. 18 — McGeehan email 12/15/25.] My preservation notices are on file.

10. On August 6–11, 2026, Defendants' counsel scheduled the parties' Rule 26(f) conference "well in advance of our October deadline to submit the proposed Scheduling Order," and advised that they would file their motion for an extension of time the following day. [Ex. 12 — Beck/Zippin emails 8/6–11/26.]

11. On September 3, 2026, defense counsel described the anticipated motion as a "motion to stay discovery." [Ex. 14 — Beck email 9/3/26.] On September 5, 2026, I stated my opposition in writing with its grounds and asked counsel to confirm whether the anticipated motion would stay only discovery or also the case-management calendar. [Ex. 15 — Plaintiff's email 9/5/26.] On September 9, 2026, counsel first disclosed that Defendants would also ask the Court to vacate the October 13, 2026 Scheduling Conference and stay the proposed-scheduling-order requirements. [Ex. 16 — Beck email 9/9/26.] The same day, I disagreed in writing with counsel's statement that a stay "should not have any impact on the statute of limitations for your claims." [Ex. 17 — Plaintiff's reply 9/9/26.]

12. On September 13, 2026, I asked defense counsel whether Defendants would agree to preserve the status quo of the PHY 3411 Incomplete — that the December 3, 2026 conversion not take effect and the Incomplete remain open. As of the date of this declaration, Defendants have not responded. [Ex. 13 — Plaintiff's status-quo request email 9/13/26.]

13. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 13th day of September, 2026.

/s/ Timothy J. Christensen
Timothy J. Christensen

**EXHIBIT LIST:**

1 — Degree Works audit;

2 — Incomplete Agreement Form (Dec. 3 / default D);

3 — catalog excerpts (Incomplete conversion + Grade Change rules);

4 — CORA request (Timeline of Decisions and Actions)

5 — Randol privilege emails (3/30–31/26);

6 — Plaintiff's 11-item email + preservation notice (4/27/26);

7 — Randol closure (4/28/26, 10:14 a.m.);

8 — Beston CCRD extension (4/28/26, 8:42 a.m.);

9 — preservation email to Ranta-Curran/Vogel (3/30/26, 11:17 a.m.);

10 — Karin Ranta-Curran listing capture 3/30/26 10:55 a.m.;

11 — Karin Ranta-Curran listing capture 4/3/26 4:58 p.m.;

12 — Beck/Zippin scheduling thread (8/6–11/26);

13 — Beck status-quo email;

14 — Beck email 9/3/26 ("motion to stay discovery");

15 — Plaintiff's email 9/5/26 (grounds + scope question);

16 — Beck email 9/9/26 (vacate disclosure);

17 — Plaintiff's reply 9/9/26 (SOL disagreement).

18 — McGeehan email (12/15/25, administering the directive)